UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


TYRONE JEROME PETERSON,

        Plaintiff,                      CASE NO.: 6:10-cv-109-Orl-35DAB

vs.                               **DISPOSITIVE MOTION**

MARCEL CARON and TROY TIEGS,

        Defendants.
_____/


**DEFENDANTS, MARCEL CARON and TROY TIEGS'S, MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT**

      COME NOW the Defendants, MARCEL CARON (hereinafter "Caron") and
TROY TIEGS (hereinafter "Tiegs"), by and through their undersigned counsel, and
respectfully state as follows:

      **I.**      **INTRODUCTION AND STATEMENT OF THE CASE**

      The Plaintiff, Tyrone Jerome Peterson (hereinafter referred to as "Mr. Peterson"
or "Plaintiff") has filed a civil rights Complaint against Marcel Caron and Troy Tiegs,
both of whom are and were at all times material to this action Orange County Deputy
Sheriffs, arising from a shooting incident on February 3, 2009 in which the Plaintiff was
shot four times by deputies Caron and Tiegs.  On February 3, 2009, Orange County
deputy Sheriffs were conducting surveillance of a stolen Dodge Ram truck.  The deputies
made contact with the truck as it pulled into the Royal Palms West Apartments.  The

truck was being driven by an individual later identified as Tyrone Peterson.  Mr. Peterson parked the truck and got into a Nissan Altima which was also later determined to have been stolen.   The Altima was initially driven by a person later identified as Javon Stewart.   Mr. Peterson was later observed driving the Altima and backing it into a parking space at Crestwood Suites.   Deputies Caron and Tiegs attempted to tactically block the Altima with their vehicles to prevent it from leaving the scene so that the investigation into the stolen Dodge truck could be furthered.   Deputies Caron and Tiegs were both wearing their Orange County Sheriff's issued tactical gear which identified them as Orange County Deputy Sheriffs and were driving unmarked Orange County Sheriff's vehicles.   Deputies Caron and Tiegs exited their vehicles, drew their weapons and announced themselves as police as they approached the Altima.  As they approached the driver's door of the Altima was open.   The deputies gave instructions for the occupants to put their hands up.  Mr. Peterson did not comply and instead closed the car door and attempted to flee, first, by backing the vehicle into shrubs behind him and then by driving forward in the direction of Deputy Caron.   This evolved rapidly within seconds.  Deputy Caron fearing for his life began shooting his firearm at Mr. Peterson in a continuous volley of shots.  Corporal Tiegs believing that Deputy Caron's life was in danger also began firing an uninterrupted volley of rounds at Mr. Peterson.  Mr. Peterson struck Deputy Caron's vehicle as he pulled the Altima out of the parking space.  He then went onto Sand Lake Road where he ran through a traffic light and struck two other vehicles.  Upon striking the two vehicles, Mr. Peterson and Mr. Stewart exited the Altima

and fled on foot.  Mr. Stewart was found on the South side of Sand Lake Road and Mr. Peterson was located in the woods on the North side of Sand Lake Road.

The Dodge truck and Altima were recovered and, it was ultimately confirmed that they had both been stolen.  Additionally, two firearms were recovered from the glove compartment of the Altima and one of the guns was later determined to have been stolen as well.  Mr. Peterson was adjudicated guilty of two counts of aggravated assault on a law enforcement officer (Deputies Caron and Tiegs) with a deadly weapon (the Altima) for the incident which is the subject of this lawsuit.[1]

Mr. Peterson sustained four gunshot wounds.[2]  The Third Amended Complaint (Doc. #36) alleges that Deputies Caron and Tiegs violated Mr. Peterson's civil rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.  Defendants deny any constitutional violation or that excessive force was used and contend that under the circumstances they faced, the force used by them was objectively reasonable, and appropriate and further that they are entitled to qualified immunity.

## II.    SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate when no genuine issue of material fact exists, and entitles the moving party to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  On

---

[1] He was also adjudicated guilty of two counts of grand theft auto regarding the Dodge truck and the Altima.  He was also later adjudicated guilty of possession of a firearm by a convicted felon.  Copies of the court documents documenting these convictions are being filed simultaneously with this motion.

[2] Peterson is no stranger to fleeing from the law enforcement officers.  In May 2008, while trying to escape from Orlando Police officers he was shot by Orlando Police officers.  Mr. Peterson was also adjudicated guilty of assault with a deadly weapon (vehicle) in connection with the 2008 incident.  Copies of the conviction paper work as to this 2008 incident are filed simultaneously with this motion.  (See also 8-13-11 Depo. of Peterson, pgs, 7-9).

such a motion, the court is only compelled to make reasonable inferences in favor of the non-moving party.  Tinker v. Beesley, 429 F.3d 1324, 1326 (11th Cir. 2005).  Once the court has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, the reasonableness of the officer's actions is a pure question of law.  Penley v. Eslinger, 605 F.3d 843, 848-49 (11th Cir. 2010).  A mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment.  Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004).  A nonmoving party, opposing a motion for summary judgment cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  The evidence presented cannot consist of conclusory allegations or legal conclusions.  Id.; Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) (Conclusions and unsupported factual allegations are legally insufficient to defeat a motion for summary judgment.); Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (Conclusory allegations without specific supporting facts have no probative value.).  Accordingly, any factual issue must have a real basis in the record.  Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002).

## III.    STATEMENT OF MATERIAL UNDISPUTED FACTS

Set forth below for purposes of the Motion for Summary Judgment only, is a statement of the material undisputed facts in the light most favorable to the Plaintiff which entitles Deputies Caron and Tiegs to summary judgment.

1.      On February 3, 2009, deputies Caron and Tiegs, along with other Orange County deputy Sheriffs, while acting within the course and scope of their duties as Orange County Deputy Sheriffs, were involved in a detail for the purpose of locating and apprehending a stolen vehicle.  (Aff.'s of Caron and Tiegs).

2.      Deputy Rafael Cruz who was also working on the stolen vehicle detail observed the Dodge truck being driven by an individual who was later identified as Tyrone Peterson.  Mr. Peterson left the vehicle at the Royal Palms West Apartments, located on West Oak Ridge Road, Orlando, Florida and was picked up by another individual later identified as Javon Stewart in a green Altima.  (Aff.'s of Caron and Tiegs).

3.      Deputies Caron and Tiegs responded to the Crestwood Suites Hotel located on Presidents Drive in Orlando, the original location where the Dodge truck and the Altima had first been observed, to set up surveillance.  Deputy Caron later observed the Altima being driven by Mr. Peterson pull into the Crestwood Suites hotel parking lot and begin backing into a parking space (Aff.'s of Tiegs and Caron).

4.      Deputies Caron and Tiegs tactically parked their vehicles in front of the Altima in an attempt to block the suspects in the Altima from escaping.  They then exited their vehicles and drew their weapons and began approaching the Altima.  As they approached they repeatedly yelled to the occupants: "Police hands up, Police hands up". Mr. Peterson, placed the vehicle in reverse and began backing up towards shrubs behind him.  When he could not back any further, Mr. Peterson then put the vehicle in drive and began accelerating forward in Deputy Caron's direction (Aff. of Caron).

5.      Deputy Caron, fearing for his life, fired a continuous volley of shots at Mr. Peterson.  Corporal Tiegs, also fearing for Deputy Caron's life, fired a volley of shots at Mr. Peterson (Aff.'s of Tiegs and Caron).

6.      Mr. Peterson struck the front right of Deputy Caron's vehicle as he pulled out of the parking space and fled the scene.  Id.

7.      Mr. Peterson later collided with two other vehicles at the intersection of Sand Lake Road and John Young Parkway.  Mr. Peterson and Mr. Stewart then fled on foot and were eventually secured by other law enforcement officers.  Id.

8.      Two firearms were found in the glove compartment in the Altima (Aff. of Caron).

9.      Deputy Caron and Corporal Tiegs were wearing tactical gear issued by the Orange County Sheriff's Office which identified them as law enforcement officers (Aff.'s of Caron and Tiegs).

10.     Mr. Peterson was ultimately charged with and pled no contest to two counts of aggravated assault on a law enforcement officer with a deadly weapon and with two counts of grand theft auto regarding the Dodge truck and the Altima.  He was adjudicated guilty on all counts (March 16, 2009 Information and October 27, 2009 Order, Sentence and Judgment; see also Depo. Peterson 8-3-11, pg. 5).

11.     Mr. Peterson was also later adjudicated guilty of possession of a firearm by a convicted felon regarding one of the firearms found in the Altima (Information and Judgment; see also Depo. Peterson 8-3-11, pgs. 12-14).

12.     On February 17, 2009 Mr. Peterson gave a recorded sworn statement to Special Agent Tony Rodriguez of the Florida Department of Law Enforcement.  (Transcript of the FDLE interview of Tyrone Peterson dated February 17, 2009).  In the sworn recorded interview Mr. Peterson testified that Deputies Caron and Tiegs had identified themselves as "Police" and that he was aware that they were the police and decided to flee because there was an outstanding warrant against him and he did not want to go to jail.  (Id. at pgs. 7-8, 13).

13.     Pursuant to investigations into the shooting, Deputies Caron and Tiegs were exonerated from any wrongdoing by the Orange County Sheriff's Officer's Professional Standards Division and by the State Attorney for the Ninth Judicial Circuit for Orange County, Florida (Aff. of Caron and April 24, 2009, letter from State Attorney).

14.     Mr. Peterson on August 16, 2010 filed an appeal as to his conviction of the criminal charges referenced in paragraph 11 above.  However as of the date of the filing of this motion the convictions have not been overturned (see Florida Fifth District Court of Appeal docket sheet in Case No.: 5D10-2759; Depo. Peterson 8-3-11, pg. 5).

## IV.   ARGUMENT

This Court is called upon by Plaintiff to address whether the use of force by Deputies Caron and Tiegs was excessive in violation of the Fourth and Fourteenth Amendments to the Constitution.  However, all claims that law enforcement officers have used excessive force should be analyzed under the Fourth Amendment and its reasonableness standard.  See Menuel v. City of Atlanta, 25 F.3d 990, 995 (11th Cir. 1994), citing Graham v. Connor, 490 U.S. 386, 395 (1989); and Carr v. Tatangelo, 338

F.3d 1259, 1267, n.15 (11th Cir. 2003) (Fourth Amendment rather than Fourteenth Amendment is proper basis to analyze excessive force claims when seized). Hence, Plaintiff's Fourteenth Amendment claim should be dismissed.

The Defendants are entitled to summary judgment in this action for three reasons. First, because no constitutional violation occurred because the force used by the Defendants was objectively reasonable and appropriate under the circumstances. Secondly, even if one assumes for purposes of argument that the force used was excessive and unconstitutional the Defendants are still entitled to qualified immunity. Thirdly, the Plaintiff was convicted of two counts of aggravated assault on a law enforcement officer with a deadly weapon, i.e. a motor vehicle which would entitle the Defendants to use deadly force against him. The adjudications of guilt have not been invalidated. Pursuant to Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994) Plaintiff should be precluded from bringing this claim as a judgment in favor of Plaintiff, would necessarily imply the invalidity of Plaintiff's underlying convictions.

### There was no Constitutional Violation

It is submitted that Deputies Caron and Tiegs acted in an objectively reasonable manner, did not violate Plaintiff's rights and also had probable cause to act as they did or at the very minimum had arguable probable cause. Therefore, the use of deadly force against the Plaintiff was reasonable under the circumstances and did not violate constitutional rights.

Whether use of deadly force under the circumstances faced by Deputies Caron and Tiegs, violated the Plaintiff's constitutional rights is governed by Tennessee v. Garner, 471 U.S. 1 (1985), Graham v. Connor, 490 U.S. 386 (1989) and their progeny.

Under Graham and Garner, claims that law enforcement officers have used excessive force are to be judged under the Fourth Amendment's objective reasonableness standard. The resolution of an excessive force claim turns on whether the challenged actions were objectively reasonable in light of the facts and circumstances facing the officers at the scene, not with 20/20 vision of hindsight. Graham, 490 U.S. at 396-397. The Court is to consider the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing. Id. at 396. A mechanical application of these factors is not appropriate. Penley, 605 F.3d at 850. Even when applying "mechanically" the Graham factors, it is clear that Defendants were investigating a serious felony[3]. See Webster v. Beary, 228 Fed.Appx. 844, 849 (11th Cir. 2007) (Unpublished), citing Ramirez v. Castro, 365 F.3d 775, 769 (9th Cir. 2004). Second, in Florida a motor vehicle is as a matter of law a dangerous instrumentality. See Cataldo v. Lazy Days R.V. Center, Inc., 920 So.2d 174, 177 (Fla. 2d DCA 2006). Third, Graham authorizes the use of force on a fleeing suspect, as does Florida law, where a law enforcement officer is justified in using force that he reasonably believes necessary to defend himself or others from bodily harm and to effectuate an arrest. See §776.05 Fla. Stat. Mr. Peterson was perceived by Deputies Caron and Tiegs as posing an immediate threat to Deputy Caron's life and Mr. Peterson admits that he was fleeing from the scene. See Webster, 228 Fed.Appx. at 849 (If from the perspective of a reasonable officer on the scene it appears that the vehicle's occupants were flight risks, and tried to drive away, the use of force is objectively

---

[3] Peterson was indeed adjudicated guilty of two counts of grand theft auto stemming from this incident.

reasonable).  The <u>Graham</u> factors, all weigh in Defendants' favor.  Force, regardless of the form directed to a driver of a vehicle – particularly one attempting to flee – does not give rise to a constitutional violation unless it was exercised with a purpose to cause harm unrelated to the legitimate object of the arrest.  <u>Troupe v. Sarasota County, Florida</u>, 419 F.3d 1160, 1167 (11th Cir. 2005).  Here the use of force was to protect Deputy Caron.

In <u>Garner</u>, the Supreme Court ruled that deadly force may be utilized when the suspect poses a threat of serious physical harm either to the officer or to others and when this is the case, it is not unconstitutional to prevent the escape of a suspect by using deadly force.  <u>Garner</u>, 471 U.S. at 11.  There is no precise test or a "magical on-off switch" to determine when an officer is justified in using deadly force.  <u>Garczynski v. Bradshaw</u>, 573 F.3d 1158, 1166 (11th Cir. 2009), <u>citing</u> <u>Scott v. Harris</u>, 550 U.S. 372, 382 (2007).  The only perspective that counts is that of a reasonable officer on the scene as the incident unfolds.  <u>Id</u>.  The reasonableness inquiry in an excessive force case is an objective one:  whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  <u>Id</u>. at 1166-1167.  Because an officer's perspective in the field differs from that of a judge sitting peacefully in chambers, courts must resist the temptation to judge an officer's actions with the 20/20 vision of hindsight.  <u>Id</u>. at 1167; <u>Penley</u>, 605 F.3d at 854 (We [Eleventh Circuit] are loath to second guess the decisions made by police officers in the field).

In <u>U.S. v. Arvizu</u>, 534 U.S. 266, 273 (2002) the Supreme Court held that when analyzing whether an officer acted reasonably, the court must look at the totality of the

circumstances of each case to see whether the officer has a particularized and objective basis for his actions.   This allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that may elude an untrained person.  Id.  Defendants had a reasonable suspicion that Plaintiff was engaged in criminal activity – indeed he was, as he was later adjudicated guilty of two counts of grand theft auto.  There is no bright line test for determining arguable probable cause or reasonable suspicion.  There is no neat set of legal rules that fit into a square box for making such determinations.  Ornelas v. U.S., 517 U.S. 690, 696 (1996); U.S. v. Cortez, 449 U.S. 411 (1981).  Police officers must make split-second decisions based on the totality of the circumstances in rapidly evolving situations which may pose danger to the officers and others.  Hindsight should not be used because reconsideration after the uncertainty and the excitement of the moment have passed will nearly always reveal that something different could have been done if the future was known before it occurred.  Robinson v. Arrugueta, 415 F.3d 1252, 1256 (11th Cir. 2005).

The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation.  Menuel v. City of Atlanta, 25 F.3d 990, 996 (11th Cir. 1994).  As in other Fourth Amendment contexts, the reasonableness inquiry in an excessive force case is an objective one:  the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  Id.  An officer's evil intentions will not make a Fourth Amendment

violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. <u>Id</u>. The Constitution does not require officers to use all feasible alternatives to avoid a situation where deadly force can justifiably be used. <u>Id</u>. Under both Florida law and federal law it is permissible for an officer to use force when the officer has probable cause to believe that the suspect poses a threat of physical harm, either to the officer or to others. <u>See</u> §776.05, Fla.Stat. and <u>Carr v. Tatangelo</u>, 338 F.3d 1259, 1268 (11th Cir. 2003).

In <u>Brosseau v. Haugen</u>, 543 U.S. 194 (2004) the Court held that it was objectively reasonable for Officer Brosseau to use deadly force against a suspect who was attempting to flee in a vehicle when she believed the suspect presented potential harm to others in the "immediate area". In this case Deputy Caron was in proximity of a stolen vehicle moving rapidly towards him by a suspect who had refused to stop when instructed to. The Plaintiff admitted in deposition, that he intended to flee. (<u>See</u> Plaintiff's sworn statement to FDLE dated 2-17-09, pgs. 7-8, 13). Under such circumstances, Defendants had only seconds to process and react to the perceived threat. It was objectively reasonable for the deputies to use deadly force against Peterson.

Plaintiff testified during his deposition that the Defendants shot at his vehicle from the rear side of the vehicle as it left the parking area omitting the fact that the Defendants' volley of shots first went through the front windshield. Plaintiff's testimony is belied by the photographs, which are part of the record evidence before the Court, which clearly show that the volley of shots started from the front of the car. Defendants reacted quickly in a rapidly evolving scenario (Aff.'s of Caron and Tiegs). Defendants

both fired a continuous volley of shots at Mr. Peterson since he represented an imminent threat to Deputy Caron.  They had to stop the threat to protect Deputy Caron and secure the suspect.   An officer is entitled to continue the use of force until a suspect who represents a threat is "fully secured".  Jean-Baptiste v. Guiterrez, 627 F.3d 816, 821, 822 (11th Cir. 2010).  It is objectively reasonable for an officer to continue to use force until the officer eliminates the possibility that he might be harmed.  Id. at 822.  Perspective is crucial in analyzing the reasonableness of the officer's actions, and the only perspective that counts is the officers as the events unfold.  Id. at 821.  Mr. Peterson was a threat not only to the deputies but to others in the area.   In fact, after hitting Deputy Caron's vehicle, he hit two other vehicles.  Mr. Peterson was certainly a threat to the deputies and others since he had previously acted in a similar manner and had pending charges for an incident with the Orlando Police Department the previous year[4].  (Depo. Peterson 8-3-11, pgs. 7-9).

## Defendants are Entitled to Qualified Immunity

To be entitled to qualified immunity, an officer need only to have arguable probable cause.  Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997); Garczynski v. Bradshaw, 573 F.3d 1158, 1167 (11th Cir. 2009).  The purpose of the qualified immunity doctrine is to give meaning to the proposition that government officials are not required

---

[4] It is requested that the Court take judicial notice of a similar lawsuit that Plaintiff has filed against the Orlando Police Department which is currently pending before this Court.  See Case No. 6:10-cv-521-35DAB.

to err on the side of caution when it comes to avoiding constitutional violations.  <u>Crosby v. Monroe County</u>, 394 F.3d 1328, 1334 (11th Cir. 2004).

Assuming *arguendo* that in spite of his previous testimony to FDLE, Mr. Peterson now disputes that Defendants identified themselves as police officers and commanded him to show his hands ("Police, hands up.  Police, hands up."), when a Plaintiff fails to establish a constitutional violation, any facts which are arguably in dispute are rendered immaterial.  <u>Bennett v. Parker</u>, 898 F.2d 1530, 1532 (11th Cir. 1989).  In the context of qualified immunity analysis, the Supreme Court has cautioned that if a court were to deny summary judgment any time a material issue of fact remains on an excessive force claim, it might undermine the goal of qualified immunity to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.  <u>Penley</u>, 605 F.3d at 848.[5]

It is undisputed that Defendants were acting within the course and scope of their duties as deputy sheriffs when they encountered the Plaintiff during a stolen vehicle investigation. (Aff.'s of Defendants Caron and Tiegs).  Once a public official asserts qualified immunity and shows that he was acting within the course and scope of his discretionary duties, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate.  <u>Storck v. City of Coral Springs</u>, 354 F.3d 1307, 1313-14 (11th Cir. 2003); <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002).  The purpose of qualified

---

[5]  In <u>Penley</u> the Eleventh Circuit affirmed summary judgment to a deputy who shot and killed a 15-year-old student who had a toy gun but was perceived as a semi-automatic firearm which represented a real threat to the deputy and others.  Here, Plaintiff was adjudicated guilty of two counts of assault with a deadly weapon.

immunity is to allow public officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation. <u>McCullough v. Antolini</u>, 559 F.3d 1201, 1205 (11th Cir. 2009).  Federal courts are obliged to grant qualified immunity unless the plaintiff can demonstrate: that the facts in the light most favorable to the plaintiff establish a constitutional violation by the officer and, that it was clearly established at the time of the incident that the actions of the defendants were unconstitutional.  <u>Id</u>.  Courts are now permitted to exercise their discretion in deciding which prong of this inquiry should be addressed first.  <u>Id</u>.  The determination of whether an officer is entitled to qualified immunity is one of law to be made by the court and not submitted to a jury. <u>Chaney v. City of Orlando</u>, 291 Fed.Appx. 238, 243 (11th Cir. 2008) (Unpublished), <u>citing</u> <u>Stone v. Peacock</u>, 968 F.2d 1163, 1165 (11th Cir. 1992); <u>Johnson v. Breeden</u>, 280 F.3d 1308, 1318 (11th Cir. 2002).  Significantly, if reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity.  <u>Storck v. City of Coral Springs</u>, 354 F.3d 1307, 1314 (11th Cir. 2003); <u>Ferraro</u>, 294 F.3d at 1194.

Government actors are entitled to qualified immunity unless their supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the official was doing would be clearly unlawful given the circumstances.  <u>Long v. Slaton</u>, 508 F.3d 576, 584 (11th Cir. 2007).  A plaintiff has the burden of demonstrating that the defendant - at the pertinent time and given the specific circumstances of the case- had fair notice that his or her conduct would violate clear federal law.  (<u>Id</u>.).  To demonstrate that

the law at the time clearly established that defendant's conduct would violate the Constitution, a plaintiff must point to either "…(1)  earlier case law from the Supreme Court, the Eleventh Circuit Court of Appeals or the highest Court of the state, that is materially similar to the current case and therefore provided clear notice of the violation or (2) general rules of law from a federal constitutional or statutory provision or earlier case law that applied with "obvious clarity" to the circumstances, establishing clearly the unlawfulness of the Defendants' conduct." Id. See also Willingham v. Loughnan, 321 F.3d 1299, 1303 (11th Cir. 2003) (preexisting, factually similar cases are…usually needed to demonstrate that officials were fairly warned that their application of force violated the victim's constitutional rights); Hadley v. Gutierrez, 526 F.3d 1324, 1333 (11th Cir. 2008) (for a right to be clearly established, previous case law must have developed it in a concrete factual context so as to make it obvious to all reasonable government actors, in the defendant's place that what he is doing violates federal law); Long 508 F.3d at 584; Crawford v. Carroll, 529 F.3d 961, 977 (11th Cir. 2008).

Officers are not required to wait and see, and "hope for the best". Garczynski, 573 F.3d at 1167, citing Scott v. Harris, 550 U.S. at 385.  Defendants reasonably believed that it was reasonable to use deadly force.  A reasonable but mistaken belief that probable cause exists is not actionable under § 1983.  Carr, 338 F.3d at 1269.  Defendants reasonably believed that Plaintiff represented a danger to Deputy Caron and others in the vicinity.  Hence, their actions were objectively reasonable and they are entitled to qualified immunity since they had probable cause or at the very least, arguable probable cause to detain Peterson regarding the stolen vehicle investigation and then to use deadly

force when he was perceived as an imminent threat while disregarding their commands and accelerating the vehicle towards Deputy Caron as he was attempting to flee.

As a matter of law the conduct of the deputies in shooting Plaintiff was not unconstitutional when viewed from an objective reasonableness standard. The record evidence establishes that: (1) the Defendants were acting in the course and scope of their duties as deputy sheriffs when they encountered the Plaintiff; (2) the deputies had reason to believe that the suspects (Peterson and Stewart) were in possession of a stolen vehicle; (3) when confronted by the deputies, Mr. Peterson ignored their commands and placed the vehicle in reverse hitting shrubs behind him and then fled while accelerating in Deputy Caron's direction; (4) Deputy Caron's vehicle was hit by the car driven by Plaintiff as he fled; (5) the deputies were wearing clothing which identified them as law enforcement officers; and (6) deputies fired their weapons in response to the vehicle accelerating towards Deputy Caron and the threat it represented.

Deputies Caron and Tiegs were forced to make split-second life and death decisions about the amount of force which was necessary in the rapidly evolving situation. A vehicle was accelerating towards Deputy Caron despite the fact that the deputies had announced themselves as law enforcement offices yelling, commands, "Police, stop. Police, stop." at the occupants of the vehicle. Under such circumstances, the deputies were justified in using deadly force. They, like Agent Arrugueta, in Robinson v. Arrugueta, 415 F.3d 1252 (11th Cir. 2005), were forced to make a split-second decision on whether to use deadly force to stop a perceived threat of death or great bodily harm from a moving vehicle. In Arrugueta, Agent Arrugueta had exited his

car and stood between the suspect's vehicle and another car.  It was estimated that the suspect vehicle was two to four feet away from Agent Arrugueta.  Agent Arrugueta, with gun drawn, verbally identified himself as a police officer, and the suspect began to drive the vehicle slowly forward at a speed of one to two miles per hour.  The Eleventh Circuit noted that the Agent had only 2.72 seconds to react to what he perceived as a threat of serious physical harm.  Deputies Caron and Tiegs also had only mere seconds to react to what they perceived as a threat of serious harm.  The Eleventh Circuit in <u>Arrugueta</u> pointed out that even if in hindsight, the facts when viewed after the incident, show that Agent Arrugueta could have escaped unharmed, that a reasonable officer in Agent Arrugueta's position could have perceived that the suspect presented a threat of serious harm to him and that it was reasonable under such circumstances to use deadly force. The Defendants, much like Agent Arrugueta, reasonably perceived that the suspect vehicle posed an immediate threat to Deputy Caron.  In <u>Webster v. Beary</u>, <u>supra</u>, the Eleventh Circuit followed <u>Arrugueta</u> and held that the deputies were justified in using deadly force against the plaintiffs based on their reasonable belief that the suspect driver was perceived as attempting to run over one of the deputies with his vehicle and therefore, the deputies did not violate the plaintiffs' constitutional rights and were entitled to qualified immunity.

In <u>Long v. Slaton</u>, 508 F.3d 576 (11th Cir. 2007) the Eleventh Circuit held that the district court erred in denying (Deputy Slaton's) motion to dismiss.  The decedent got into the deputy's cruiser and was shot by the deputy as he was trying to drive away.  The Court held that even if it accepted the plaintiff's argument that the decedent was not an

immediate threat to the deputy because the cruiser was not moving towards him when shots were fired, the law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect.  Id. at 581.  Mr. Peterson actually drove the vehicle in Deputy Caron's direction.

In McCullough v. Antolini, 559 F3d 1201 (11th Cir. 2009), a case similar to the instant case, the Eleventh Circuit held that deputies who shot and killed a suspect who drove a vehicle in an officer's direction and endangered his life were entitled to qualified immunity.  The suspect did not respond to the officer's commands, tried to flee by driving in reverse and then towards Deputy Antolini and struck his vehicle.  The suspect tried to drive out of the boxed-in situation that the officers had him in.  As the vehicle rolled away, the deputies followed it on foot firing more rounds at the vehicle.  The Court followed its precedents and held that the deputies had probable cause to believe that the suspect posed a direct threat of serious bodily harm and did not violate the suspect's constitutional rights and were entitled to qualified immunity.

Even if this Court were to determine that there exists a material question of fact as to whether the force used by Deputy Caron and Corporal Tiegs was unconstitutional, this Court must still make a determination as to whether the law was so clearly established at the time of the actions by Deputy Caron and Corporal Tiegs, that they should have known that their actions were plainly unlawful and that in fact, any reasonable deputies in their shoes would have known that using deadly force under such circumstances was plainly unlawful.  According to Arrugueta, even material issues of disputed fact do not foreclose the grant of summary judgment based on qualified immunity.  Defendants are shielded

from liability unless every reasonable officer in their position would conclude that the force used was unlawful.  Jean-Baptiste, 627 F.3d at 821.

Qualified immunity shields an officer from suit when he/she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.  Brosseau, 543 U.S. at 198.  It was not so clearly established at the time of this incident that the actions of the Defendants violated the Plaintiffs' Fourth Amendment rights.  To the contrary, the clearly established law authorized their actions.  See Arrugueta, Long, McCullough, Brosseau, and Webster. When the Plaintiff began accelerating toward Deputy Caron, posing a threat of bodily harm or death to Deputy Caron, the case law allowed the use of deadly force.  Based on the record evidence before this Court and the existing precedent in Arrugueta, Long, McCullough, and Brosseau, this Court should rule that Defendants did not violate Plaintiff's rights or at the very minimum that the law on February 3, 2009, was not so clearly established that Deputy Caron and Corporal Tiegs should be deprived of qualified immunity.

**Plaintiff's Claim is Precluded by his Underlying Conviction**

The gist of the Plaintiff's claim is that the use of deadly force by Defendants against the Plaintiff was excessive and unconstitutional.  The Plaintiff's claim should be dismissed as the claim by its very nature calls into questions, the validity of the Plaintiff's criminal convictions for aggravated assault with a deadly weapon against a law enforcement officer.  Pursuant to the holding in Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed. 2d 383 (1994) if the Plaintiff's prevailing on a §1983 claim would

necessarily imply the invalidity of an underlying conviction or sentence, the §1983 action is required to be dismissed.

The record before this Court establishes that the State Attorney for Orange County issued an Information on March 16, 2009 charging the Plaintiff with two counts of grand theft auto and two counts of aggravated assault with a deadly weapon on a law enforcement officer in connection with the incident which is the subject of the instant lawsuit.  (March 16, 2009 Information).   On October 27, 2009, the Plaintiff pled no contest to each of the referenced criminal charges.  The Court accepted the Plaintiff's pleas and adjudicated the Plaintiff guilty on each count.  (Order of Judge Latimore, dated October 27, 2009 and Judgment dated October 27, 2009).

To establish an aggravated assault charge, the State had to prove that Plaintiff had the specific intent to do violence to the officers.  Denard v. State, 30 So.3d 595, 596 (Fla. 5th DCA 2010).   This threat element addressed Mr. Peterson's intent and not simply the reaction of the officers perceiving the act.  (Id.)  Since Defendants' actions were in response to the immediate threat that Mr. Peterson represented, he is precluded from bringing a cause of action against Deputy Caron and Tiegs for using deadly force against him.  See Brown v. City of Hialeah, 30 F.3d 1433, 1437 (11th Cir. 1994) (A criminal defendant, as a plaintiff in a civil proceeding, is prohibited from relitigating the same issue that was litigated in the prior criminal proceeding).  The facts surrounding the issue of whether Plaintiff assaulted Deputy Caron where necessarily decided in the criminal case where Mr. Peterson was convicted of two counts of aggravated assault on a law enforcement officer with a deadly weapon (vehicle).  (Id.); see also, Lloyd v. Card, 283 Fed.Appx. 696, 701 (11th Cir. 2008)

(Unpublished) (A defendant who is adjudicated guilty is collaterally estopped from seeking affirmative relief based on the same conduct that gave rise to the prior prosecution); City of Orlando v. Pineiro, 66 So.3d 1064, 1074 (Fla. 5th DCA 2011) (In civil actions, where one of the issues is the guilt of the person convicted of a criminal offense or some fact necessarily involved in the determination of such guilt, it is proper to admit said evidence).

On February 17, 2009, Mr. Peterson gave a sworn statement to Special Agent Tony Rodriguez of the Florida Department of Law Enforcement (FDLE) where he admitted that during the incident which is the subject of this lawsuit, he intended to flee from Deputies Caron and Tiegs because he knew they were law enforcement officers and there was an outstanding warrant for his arrest and he did not want to go to jail. However, when first deposed by Defendants' counsel, although Plaintiff conceded that he had spoken to FDLE, he could not "remember" the extent of his prior testimony.[6] Plaintiff did not deny that he had given prior testimony to FDLE but in his first deposition, claimed that he did not "remember" what he said - to the extent that he now alleges that he did not know that Defendants were law enforcement officers, Defendants submit that Plaintiff cannot contradict his prior sworn testimony.  When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create a fact issue with an affidavit [or a subsequent deposition] that merely contradicts, without explanation, previously given

---

[6] Plaintiff was again deposed on August 3, 2011 and on this second deposition, page 11, he admitted that at the time of the incident which is the subject of this lawsuit, he was out on bond regarding the previous incident with the Orlando Police Department.

clear testimony.  Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc., 736 F. 2d 656, 657 (11th Cir. 1984).  See also, McCormick v. City of Ft. Lauderdale, 333 F. 3d 1234, 1240 n.7 (11th Cir. 2003) (the Court may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by Plaintiff's statement given shortly after the incident to the police).  A party opposing summary judgment may not substitute an affidavit [or subsequent testimony] alleging helpful facts in place of earlier testimony in hopes of avoiding summary judgment.  Moore v. Tractor Supply Company, 352 F. Supp. 2d 1268, 1275-1276 (S.D. Fla. 2004).  Plaintiff may not create a factual dispute by attempting to recharacterize the nature of his/her position.  (Id.)  Peterson gave a sworn statement fourteen days after the incident in which he admitted that he knew that Defendants were police officers and he fled because there was an outstanding warrant against him.  By conveniently not "remembering" what he told the FDLE at the time, Plaintiff cannot avoid summary judgment with regard to the reasonableness of Defendants' actions.  In any event, it is undisputed that Plaintiff was fleeing from the scene since he alleges it in both the Third Amended Complaint and his statement.

The use of deadly force by law enforcement officers is authorized when they are faced with the imminent threat of serious physical harm to the officer or to others.  F.S. §776.05; Tennessee v. Garner, 471 U.S. 1 (1985) under Florida law, a motor vehicle is deemed a dangerous instrumentality which obviously can cause serious physical injury or great bodily harm.  Cataldo v. Lazy Days R.V. Center, Inc., 920 So.2d 174, 177 (Fl. 2d DCA 2006).  Moving motor vehicles can pose a serious threat of serious injury or great

bodily harm which warrants the use of deadly force.  See Arrugueta, McCullough, and Brosseau, supra.

The adjudication of guilt against Plaintiff as to the two charges of aggravated assault with a deadly weapon, (a motor vehicle) would be called into question should the Plaintiff prevail in this action on his claim that the use of deadly force under the circumstances was excessive and unconstitutional.  The Plaintiff is belatedly appealing his prior convictions.  However, as evidenced by the copy of the docket sheet in his appellate proceedings from the underlying criminal convictions (filed simultaneously here with), such convictions have not been overturned.

## V.    CONCLUSION

For the reasons set forth above, Defendants CARON and TIEGS respectfully submit that they are entitled to summary judgment entered in their favor.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of November, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that a copy of the foregoing and Notice of Electronic Filing has been furnished, by first-class mail, to the following non-CM/ECF participant:  Plaintiff, TYRONE JEROME PETERSON (Pro Se Plaintiff), DC #X43597, Taylor Correctional Institution, 8515 Hampton Springs Road, Perry, FL   32348.

s/ Jeanelle G. Bronson
JEANELLE G. BRONSON
Florida Bar No. 266337
WALTER A. KETCHAM, JR.
Florida Bar No. 156630
RAMON VAZQUEZ
Florida Bar No. 196274
Attorneys for Defendants
GROWER, KETCHAM, RUTHERFORD,
BRONSON, EIDE & TELAN, P.A.
P.O. Box 538065
Orlando, FL  32853-8065
Suite 450, 901 N. Lake Destiny Road
Maitland, FL  32751-4886
Phone: (407) 423-9545; Fax:  (407) 425-7104
e-mail   jgbronson@growerketcham.com
         waketcham@growerketcham.com
         rvazquez@growerketcham.com
         gk@growerketcham.com